UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| DEBBIE D. PORTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 12-77-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The plaintiff, Debbie Porter, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of an administrative decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB').  The Court, having reviewed the record and for the reasons stated herein, will deny Johnson's Motion for Summary Judgment [R. 7], and grant that of the Commissioner [R. 9.]

**I**

Porter filed her application for DIB on January 20, 2005.  [Transcript ("Tr.") 84.] She alleges disability, beginning August 15, 2003, due to neck, back, shoulder and hip injuries related to a motor vehicle accident, hypertension, diabetes, depression, diabetes, muscle spasm, and hepatitis C.  [Tr. 84, 100.]  Porter's application was denied initially on May 31, 2006 [Tr. 44] and again upon reconsideration on January 29, 2007. [Tr. 42.]  An Administrative hearing was conducted before Administrative Law Judge ("ALJ")

1

Thomas R. King on February 7, 2008.  [Tr. 386-407.]  On May 23, 2008, the ALJ issued

a decision denying DIB to Porter.  [Tr. 15-24.]   This denial decision was appealed to the

United States District Court of the Western District of Virginia, which reversed and

remanded the action on August 6, 2009.[1]  [Tr. 521-38.]  Following the remand, another

hearing was held on March 4, 2010 before ALJ Geraldine H. Page at which time

Vocational Expert ("VE") Donald Anderson appeared as a witness.  [Tr. 644-65.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis.  See 20

C.F.R. 416.920.[2]  First, if a claimant is working at a substantial gainful activity, he is not

disabled.  20 C.F.R. § 416.920(b).  Second, if a claimant does not have a severe

impairment, he is not disabled.  20 C.F.R. § 416.920(c).  Third, if a claimant's

impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P,

Appendix I, he is disabled.  20 C.F.R. § 416.920(d).  Fourth, if a claimant's impairments

do not prevent him from performing past relevant work, he is not disabled.  20 C.F.R. §

416.920(e).  Fifth, if a claimant's impairments (considering his residual functional

---

[1]     This action was remanded because the court found that the ALJ improperly relied on
Rule 201.21 from Part 404, Appendix 2 to Subpart P. [Tr. 534.]  The court judged that Porter's
impairments prohibited the ALJ from simply relying on that rule and testimony from a vocational
expert was required. [*Id.*]  Upon remand, the ALJ was instructed to obtain vocational expert
testimony and reconsider the previous decision. [*Id.*]
[2]     The Sixth Circuit Court of Appeals summarized this process in *Jones v. Comm'r
of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act,
> the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520.
> Through step four, the claimant bears the burden of proving the
> existence and severity of limitations caused by her impairments and the
> fact she is precluded from performing her past relevant work, but at
> step five of the inquiry, which is the focus of this case, the burden shifts
> to the Commissioner to identify a significant number of jobs in the
> economy that accommodate the claimant's residual functional capacity
> (determined at step four) and vocational profile.  *Id*. at 474.

capacity, age, education and past work) prevent him from performing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 416.1520(f).

In this action, at Step 1, the ALJ found that Porter had not engaged in substantial gainful activity since the alleged onset date onset date of August 27, 2003 through her date last insured ("DLI") of December 31, 2008.  [Tr. 431.]  At Step 2, the ALJ found that as of the DLI, Porter suffered from severe impairments relating to obstructive sleep apnea, a depressive disorder, borderline IQ, arthralgias, diabetes mellitus, degenerative disc disease of the cervical and lumbar spines, and obesity.  [Tr. 433.]  At Step 3, the ALJ found that the plaintiff's impairments did not meet or equal one of the listed impairments. [Tr. 434-35.].  At Step 4, the ALJ determined that Porter possessed the residual functional capacity ("RFC") to perform a restricted range of light level work but could not return to her past relevant work as a fast food restaurant manager.  [Tr. 440-41, 443.]  At Step 5, the burden of coming forward with evidence shifted to the Commissioner to identify a significant number of other jobs in the economy Porter could perform.  *Jones*, 336 F.3d at 474.  Here, the ALJ concluded that there were a significant number of jobs in the economy Porter could perform at the DLI based on the testimony of the VE.  [Tr. 443.] Accordingly, on April 29, 2010, the ALJ issued an unfavorable decision, finding that Porter was not disabled, and therefore, not eligible for DIB. [Tr. 444.]  The Appeals Council found no reason for review on March 21, 2012  [Tr. 408-410] and Porter now seeks judicial review in this Court.[3]

_____

[3] The plaintiff moved from Virginia to Kentucky at some point following the March 2010 hearing making this Court proper venue.

**II**

**A**

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir. 1994).  The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id*.  However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id*.  Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B**

Porter's first argument on appeal is that the ALJ erred in finding that the VE identified a significant number of jobs in the regional economy which could still be performed.  The hypothetical question presented by the ALJ  included a limitation to sedentary level work restricted from a full range by such non-exertional restrictions as: (1) an inability to stand or walk for more than two hours in an eight-hour day; (2) an

inability to sit for more than six hours in an eight-hour day; (3) an inability to more than

occasionally climb ramps and stairs, balance, or stoop; (4) an inability to more than

frequently kneel, crouch, or crawl; (5) an inability to perform work around hazardous

machinery or at unprotected heights, or work on vibrating surfaces; (6) an inability to

ever climb ladders, ropes, or scaffolds; and (7) a limitation to simple, routine, repetitive

and unskilled work.  [Tr. 660-61.]  In response, the VE identified the positions of

production manufacturing inspector with 116,000 national, 2,600 state and 100 regional

jobs, a folder with 124,000 national, 2,300 state, and 170 regional jobs and laminator

with 21,000 national, 1,000 state and 50 regional jobs.  [Tr. 661-662].  Porter asserts that

the ALJ confused the regional and state numbers by citing the statewide numbers as

regional figures.  [Tr. 444.]  There would actually only be 320 regional jobs available,

which Porter asserts is too small to constitute a significant number of jobs in accordance

with 20 C.F.R. § 404.1566.  Porter also argues that the ALJ erred by stating that the VE

had indicated these were representative unskilled jobs, but the testimony actually

indicates that these were an exhaustive list. [Tr. 444, 662.]

        The Court must reject Porter's argument.  The ALJ's reference to the  regional

jobs numbers as state job numbers is merely a typographical error and would not justify a

reversal of the administrative decision.  With regard to the adequacy of the cited job

numbers, the Sixth Circuit Court of Appeals has noted that it is impossible to "set forth

one special number which is to be the boundary between a 'significant number' and an

insignificant number of jobs."  *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988).  The

determination must be made by weighing the statutory language and applying it to a

particular claimant's factual situation.  *Born v. Sec'y of Health and Human Servs.*, 923

F.2d 1168, 1174 (6th Cir. 1990).  Among the factors to be considered are: the level of

claimant's disability; the reliability of the vocational expert's testimony; the reliability of

the claimant's testimony; the distance claimant is capable of traveling to engage in the

assigned work; the isolated nature of the jobs; the types and availability of such work,

and so on.  *Hall*, 837 F.2d at 275.  In the present action, Porter has only complained that

320 regional jobs would not be an adequate number without specifying any reasons why.

The  Court notes that the "region" was not defined by the VE, so it is unclear whether

320 regional jobs would be too small to constitute a significant number of jobs.  The VE

also identified 5,900 state positions.  The Sixth Circuit Court of Appeals has indicated

that as few as 4,000 to 5,000 state positions would be a significant number in the absence

of arguments to the contrary.  *McCormick v. Sec'y of Health and Human Servs*., 861 F.2d

998, 1000, 1002 (6th Cir. 1998).  These job numbers appear adequate whether or not  they

were an exhaustive list.  Therefore, the court must reject the plaintiff's argument.

### C

Porter asserts the ALJ erred by failing to find documented conditions relating to

Meniere's syndrome and to her hands to be severe impairments.  With regard to

Meniere's syndrome, Dr. Samir Guindi treated her for this condition and opined in

August of 2008 that she was completely disabled by it. [Tr. 385.]  Under the federal

regulations, determining disability is an issue reserved to the Commissioner and such an

opinion is not binding. 20 C.F.R. § 404.1527(e)(1).  Dr. Guindi did not impose specific

physical restrictions relating to this condition which the ALJ omitted from the RFC and

hypothetical question.  The doctor noted that dizziness was a major problem associated

with the ailment. [Tr. 385.]  The ALJ included in his RFC limitations relating to balance,

climbing, and exposure to heights and dangerous machinery which would arguably accommodate this problem.  Furthermore, the ALJ noted that Meniere's Syndrome, which was only first noted in July of 2008  [Tr. 640], had not lasted for a continuous twelve-month period  prior to the plaintiff's DLI on December 31, 2008.  Thus, it did not meet the duration requirements of 20 C.F.R. § 404.1509 to qualify as a severe impairment.  Therefore, this condition was properly found not to be severe.

With regard to Porter's hands, the ALJ noted that a bone density test of the right wrist had been normal in January 2007.  [Tr. 324, 434.]  Dr. Stephen Nutter, an examining consultant, reported that she was able to make a fist, write, and pickup coins with either hand without difficulty during the physical examination.  [Tr. 252, 434.]  No treating or examining source of record identified more severe physical restrictions relating to the plaintiff's hands than were included in the RFC and hypothetical question. Therefore, the Court finds no error.

**D**

Porter also argues that the ALJ erred in evaluating her mental condition.  The plaintiff asserts that the ALJ  failed to give appropriate weight to the opinion of Phil Pack, a psychologist who examined her in April of 2006.  Pack diagnosed a depressive disorder. [Tr. 228.]  The examiner opined that Porter would have a fair ability to handle instructions and a fair to poor ability to sustain attention for repetitive tasks and to get along with co-workers and supervisors. [Tr. 229].  The ALJ noted Pack's opinion and did not specifically reject it. [Tr. 436, 442.]  The ALJ's findings were essentially consistent with these somewhat vague mental limitations indicated by Pack.  To the extent they were not, the ALJ's findings were compatible with the mental limitations noted by

Psychologist Jeanne Bennett, another examiner, who noted a moderate limitation of ability to tolerate stress and pressure and slight impairment of ability to sustain attention and concentration to perform simple, repetitive tasks and respond appropriately to supervisors and coworkers.  [Tr. 378.]  This opinion would offset that of Pack and, so, the court finds no error.

Finally, Porter asserts that the ALJ erred in rejecting the Global Assessment of Functioning ("GAF" ) score of 50 indicated by Bennett.  [Tr. 378.]  Such a GAF suggests the existence of serious psychological symptoms according to the American Psychiatric Association's *Diagnostic and Statistical Manual for Mental Disorders*, (4th Ed.--Text Revision), p. 34.   The ALJ noted the finding but rejected it because it was inconsistent with Bennett's mental examination findings relating to the plaintiff's attention, concentration, recent recall, and thought processes, all of which were reported to be intact. [Tr. 376-77, 442.]  The GAF rating was current, rather than for the past year and it might not reflect her long-term functioning.  Therefore, the court finds no error.

### III

Accordingly, and the Court being sufficiently advised, it is hereby ordered as follows:

(1) Plaintiff's motion for Summary Judgment [R.  7] is **DENIED**;

(2) Defendant's Motion for Summary Judgment [R. 9] is **GRANTED**; and,

(3) **JUDGMENT** in favor of the defendant will be entered contemporaneously herewith.

This 11th day of January, 2013.



Signed By:

**_Gregory F. Van Tatenhove_**

**United States District Judge**